**BEFORE: THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**HONORABLE CLAIRE R. KELLY, JUDGE**

|  |  |  |
|---|---|---|
| BUILDING SYSTEMS DE MEXICO, S.A. DE C.V., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Court No. 20-00069** |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) ) | |
| FULL MEMBER SUBGROUP OF THE AMERICAN INSTITUTE OF STEEL CONSTRUCTION, LLC, and COREY S.A. DE C.V., | ) ) ) ) | |
| Defendant-Intervenors. | ) ) ) | |

**RESPONSE IN OPPOSITION TO MOTION TO STAY**

Plaintiff Building Systems de Mexico, S.A. de C.V. ("BSM") hereby responds to the

motion to stay filed by Defendant the United States ("the Government"). Def.'s Mot. to Stay

Proceedings, ECF No. 96. For the reasons that follow, the Government's motion should be

denied, and this case should continue to proceed according to the schedule set forth in the

Court's March 21, 2022 opinion and order. ECF No. 86.

The decision regarding whether to stay proceedings is "within the sound discretion of the

trial court." *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997).

In deciding whether to grant a stay, the Court must "weigh competing interests and maintain an

even balance." *SKF USA Inc. v. United States*, 36 C.I.T. 842, 844 (2012) (quoting *Landis v. N.

Am. Co.*, 299 U.S. 248, 257 (1936)). The party moving for a stay "must make out a clear case of

hardship or inequity in being required to go forward, if there is even a fair possibility that the

stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255; *see also*

*Georgetown Steel Co. v. United States*, 27 C.I.T. 550, 553, 259 F. Supp. 2d 1344, 1346-47

(2003) (same).  "In other words, a movant must 'make a strong showing' that a stay is necessary

and that 'the disadvantageous effect on others would be clearly outweighed.'" *Georgetown*

*Steel*, 27 C.I.T. at 553, 259 F. Supp. 2d at 1347 (quoting *Commodity Futures Trading Comm'n v.*

*Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983)).

The Court denied a motion to stay filed by Defendant-Intervenor the Full Member

Subgroup of the American Institute of Steel Construction, LLC ("AISC") earlier in this

proceeding.  *Bldg. Sys. de Mexico, S.A. de C.V. v. United States*, 463 F. Supp. 3d 1344 (Ct. Int'l

Trade 2020).  In that motion, AISC sought to stay proceedings until 30 days after a NAFTA

binational panel's review of the International Trade Commission's ("ITC's") negative injury

determination regarding imports of fabricated structural steel ("FSS") from Mexico in the

companion injury investigation to the antidumping investigation that underlies this action.  *See*

*id.* at 1346-47.  The Court concluded that "AISC fails to make a strong showing of hardship or

inequity in being required to go forward with the proceeding, while staying the case risks causing

harm to BSM and undermining judicial economy."  *Id.* at 1348.  The Government now seeks a

stay until 30 days after the Court of Appeals for the Federal Circuit ("Federal Circuit") issues a

decision in the appeal of the ITC's negative determination as it applies to imports of FSS from

China, which involves the same substantive determination by the ITC and raises many of the

same issues as the appeal of the ITC's determination as it applies to imports of FSS from

Mexico.  *See* Def.'s Mot. to Stay Proceedings, ECF No. 96.[1]  Because a stay still "risks causing

---

[1] AISC has moved for a stay of the NAFTA binational panel proceedings regarding the ITC's
negative injury determination regarding imports of FSS from Mexico and represented that it

harm to BSM" and the Government has "fail{ed} to make a strong showing of hardship or inequity in being required to go forward with the proceeding," the Government's motion should be denied.  *See Bldg. Sys. de Mexico*, 463 F. Supp. 3d at 1348.

In its opinion denying AISC's motion for a stay, the Court summarized the potential harms to BSM and BSM's legitimate interest in proceeding with the litigation as follows:

> As a preliminary matter, the statute indicates that BSM may seek judicial review of Commerce's final determination before the agency issues an ADD order.  *See* 19 U.S.C. § 1516a(a)(3).  Moreover, should a NAFTA panel or this Court's review of the ITC's determination result in an affirmative remand redetermination, the U.S. Customs and Border Protection will be instructed to suspend liquidation of BSM's entries and to collect cash deposits based on the dumping margins calculated in the Final Results.  19 U.S.C. § 1673d(c)(1); 19 C.F.R. § 351.210(d).  Thus, to the extent that it could cause a change to BSM's dumping margin, the court's ruling on the present challenge to the Final Results would have practical consequences for BSM. A successful challenge to Commerce's Final Results may result in a lower (if not a zero or *de minimis*) dumping margin, reducing BSM's cash deposit rate (if not resulting in BSM's exclusion from an ADD order altogether).  *See* 19 U.S.C. § 1673d(c)(1); 19 C.F.R. § 351.210(d).  Prompt review of the pending challenge to the Final Results would allow the court to begin the sometimes-lengthy process of clarifying and remanding any unlawful agency determinations for further explanation or reconsideration.

*Bldg. Sys. de Mexico*, 463 F. Supp. 3d at 1348.  Although the Government claims that certain facts have changed since the Court denied the previous motion for a stay—namely that the Court has resolved the question regarding jurisdiction over this action and that the requested stay would be of a more limited duration compared to the stay requested by AISC at the outset of the litigation—the Government has not shown that any of these material facts regarding the harms faced by BSM and its interest in prompt resolution of this litigation have changed.

BSM still has a right to obtain judicial review of Commerce's final determination before an antidumping duty order is issued, and BSM still has a strong interest in obtaining a lower

---

intends to withdraw its appeal before the NAFTA panel if the ITC's determination as it applies to imports of FSS from China is upheld in full by the Federal Circuit.

margin *before* an antidumping duty order might be issued in connection with a remand of the

ITC's injury determination.  As BSM explained in its opposition to AISC's motion for a stay,

BSM seeks to avoid having to pay cash deposits pursuant to a potential antidumping duty order

at a rate that BSM considers unlawful.  Moreover, if an antidumping duty order is eventually

issued, unless this litigation is completed within a year of that order, BSM is at risk of having to

participate in costly administrative reviews despite BSM's legitimate arguments that Commerce

should have calculated a zero or *de minimis* margin for BSM, which would require BSM's

exclusion from the order.  In fact, the Court has held that several aspects of Commerce's final

determination were unsupported by substantial evidence and otherwise not in accordance with

law.  Opinion and Order, ECF No. 86.  The Government's requested stay would significantly

increase the risk that BSM might need to pay cash deposits on the basis of a Commerce

determination that the Court *already* has found was unlawful.

The Government asserts that the stay will likely be of "limited duration."  Def.'s Mot. to

Stay Proceedings at 6, ECF No. 96.  To be clear, the stay that the Government seeks will not be

short.  The Government cites statistics from the Federal Circuit indicating "a median docketing-

to-disposition time of approximately 13 months for cases from this court."  *Id.*  Even assuming

that the appeal of the ITC's injury determination involving FSS from China proceeds along that

timeline, a decision from the Federal Circuit would not be issued until December 2022 or

January 2023.  That is at least seven months from now.  Moreover, the Government's requested

stay would extend at least 30 days beyond a Federal Circuit decision, which is when the parties

would be required to file a joint status report.  *Id.* at 7.  So that is at least eight months away.

Presumably, only at that point might Commerce resume its remand.  Furthermore, BSM notes

that per Federal Rule of Appellate Procedure 40(a)(1), petitions for rehearing at the Federal

Circuit are not due until 45 days after the panel decision.  To the extent the rationale for the

Government's motion is that litigation in this action should not proceed while the Federal Circuit

resolves the related injury appeal, "final" resolution of that appeal by the Federal Circuit (Def.'s

Mot. to Stay Proceedings at 5, ECF No. 96) will not occur until at least the deadline for parties to

file motions for rehearing passes.  Thus, the stay will likely need to be extended in order to

achieve the objective set forth by the Government, delaying these proceedings even further.

Although the Government's requested stay might not last years, which likely would have been

the case had the Court granted AISC's motion for a stay, the Government's requested stay is

likely to last into 2023, and Commerce will not issue a remand determination until spring 2023

or later if this litigation ultimately continues.

      Currently, Commerce's remand determination is due June 20, 2022.  The Government's

requested stay could set that timeline back by nearly a year.  As the Court noted in its opinion

denying AISC's request for a stay, the process of clarifying and remanding agency

determinations is a "sometimes-lengthy process." *Bldg. Sys. de Mexico*, 463 F. Supp. 3d at 1348.

Even under the current schedule and assuming no extensions of any of the deadlines, briefing

before this Court on the remand determination is not due to conclude until September 2, 2022,

when the joint appendix must be filed.  *See* Opinion and Order at 27, ECF No. 86.  There will be

no final judgment in this litigation until the Court issues an opinion following the briefing on the

remand determination, and the Court could remand Commerce's determination more than once,

which would significantly extend the timeline for issuing judgment in this case.  In light of

BSM's legitimate interests in having this litigation resolved or as close to resolved as possible

before the issuance of any antidumping duty order in the event of a revised ITC determination,

delaying these proceedings for nearly a year risks significant harm to BSM.  AISC's desire to

avoid expending resources on this litigation was not sufficient to overcome the potential harms to BSM of a stay earlier in these proceedings, and the Government's similar desire to avoid expending resources likewise does not outweigh the potential harms to BSM of a stay. The competing interests therefore favor proceeding with the litigation and denying the Government's motion for a stay.

The Government contends that "{w}ell-established precedent also confirms a stay under these circumstances is appropriate." Def.'s Mot. to Stay Proceedings at 6, ECF No. 96. Yet, the Government cites only other cases from this Court, which do not constitute binding precedent. As stated above, the decision on whether to grant a stay is a discretionary decision, requiring a consideration of the competing interests in the particular case at hand. The fact that a stay was entered in other cases before this Court does not show that the Court should issue a stay in this case, especially at this point in the proceedings. The parties in this case fully briefed BSM's challenges to Commerce's final determination, and the Court has already held that Commerce's final determination was unsupported by substantial evidence and otherwise not in accordance with law. None of the cases cited by the Government involve a motion to stay in the middle of proceedings, after the Court had issued an initial decision on the merits, and therefore the posture of those cases was entirely different.

Nor do any of the cases cited by the Government involve a foreign producer or exporter challenging the rate calculated by Commerce in the hopes of obtaining a zero or *de minimis* rate, which would exclude them from a potential antidumping or countervailing duty order. Thus, the risks to BSM of a stay and BSM's interest in proceeding with this litigation that were central to the Court's prior decision denying AISC's motion for a stay were not present in any of the cases cited by the Government. In fact, in three of the four cases cited by the Government—*RHI*

*Refractories Liaoning Co. v. United States*, 774 F. Supp. 2d 1280 (Ct. Int'l Trade 2011), *NTN Bearing Corp. of Am. v. United States*, 36 C.I.T. 846 (2012), and *Deacero S.A.P.I. de C.V. v. United States*, 2015 WL 4909618 (Ct. Int'l Trade 2015)—the Court found that the opponents of the stay had failed to show a fair possibility that a stay would damage their interests *at all*. Here, the Court has already identified a fair possibility that BSM will be harmed by a stay, and the three cases involving a lack of potential harm from a stay are completely dissimilar.

The only other case cited by the Government is *Diamond Sawblades Manufacturers' Coalition. v. United States*, 34 C.I.T. 404 (2010). That case involved a motion to a lift a stay, after the parties had previously consented to a stay. *Id.* at 405. The procedural posture of that case is thus very different from this case, where the Court has already issued a decision on the merits and a party is now seeking a stay in the middle of proceedings. *Diamond Sawblades* also involved an appeal by a domestic petitioner seeking to obtain a higher cash deposit rate for certain foreign producers, and there is no indication that the appeal would affect whether certain companies would actually be covered by an antidumping duty order in the event of an affirmative ITC remand determination. *See id.* at 407.

As explained above, this appeal could result in a zero or *de minimis* margin for BSM, and it therefore affects whether BSM would be covered at all by an eventual antidumping duty order instead of just BSM's cash deposit rate. BSM thus has a much stronger interest in promptly resolving its claims than the petitioner did in *Diamond Sawblades*. Finally, in *Diamond Sawblades*, by the time of the Court's ruling on the motion to stay, the Federal Circuit had already heard oral argument in the related case upon which the stay was based. *See id.* at 405 (noting that related Federal Circuit case was argued on February 2, 2010, which was more than two months before Court's April 15, 2010 opinion). A decision from the Federal Circuit was

therefore imminent.  By contrast, briefing in the appeal of the injury determination regarding

FSS from China is still ongoing, and according to the Government's own timeline, a decision by

the Federal Circuit is not expected for another seven or eight months.  The stay requested in this

case would be much longer than what was expected by the Court in *Diamond Sawblades*, which

amplifies the potential harms to BSM of a stay.

The Court previously determined that this case should proceed toward a prompt

resolution.  The Government has not put forth any persuasive reason to depart from that course.

BSM therefore respectfully requests that the Court deny the Government's motion for a stay.


Respectfully submitted,

/s/ Matthew R. Nicely
Matthew R. Nicely
Daniel M. Witkowski
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street N.W.
Washington, D.C. 20006
Tel: (202) 887-4046
E-mail: mnicely@akingump.com

*On Behalf of Building Systems de Mexico, S.A. de C.V.*

Dated: May 16, 2022