Slip Op. 22-56

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BUILDING SYSTEMS DE MEXICO, S.A. DE C.V., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> FULL MEMBER SUBGROUP OF THE AMERICAN INSTITUTE OF STEEL CONSTRUCTION, LLC and COREY S.A. DE C.V., <br><br> Defendant-Intervenors. | Before: Claire R. Kelly, Judge <br><br> Court No. 20-00069 |

## OPINION AND ORDER

[Denying Defendant's motion to stay.]

Dated: May 26, 2022

Matthew R. Nicely and Daniel M. Witkowski, Akin Gump Strauss Hauer & Feld LLP, of Washington, D.C., for plaintiff.

Franklin E. White, Jr., Assistant Director, and Daniel F. Roland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington D.C., for defendant. Also on the brief were Patricia M. McCarthy, Director, and Brian M. Boynton, Acting Assistant Attorney General. Of counsel on the brief was Spencer Neff, Staff Attorney, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Kelly, Judge: Before the court is Defendant United States' motion, brought pursuant to Rules 1 and 7 of the United States Court of International Trade, to stay proceedings in this case pending a decision by the U.S. Court of Appeals for the Federal Circuit ("Court of Appeals") in <u>Full Member Subgroup of the Am. Inst. of Steel Constr., LLC v. United States</u>, No. 2022-1176 (Fed. Cir.) ("<u>Full Member Appeal</u>"). Def.'s Mot. to Stay Proceedings, Apr. 29, 2022, ECF No. 96 ("Def. Mot."). Defendant-Intervenor Full Member Subgroup of the American Institute of Steel Construction, LLC ("AISC") consents to the motion.[1] <u>Id.</u> at 2. Plaintiff, Building Systems de Mexico, S.A. de C.V. ("BSM") opposes the motion. Resp. in Opp'n to Mot. to Stay, May 16, 2022, ECF No. 97 ("Pl. Opp."). For the following reasons, the court denies the motion to stay proceedings.

## BACKGROUND

On January 30, 2020, the U.S. Department of Commerce ("Commerce") determined that imports of certain fabricated structural steel ("FSS") from Mexico were being, or were likely to be, sold in the United States at less than fair value ("LTFV"), and its investigation yielded weighted-average dumping margins of 8.47 and 0.00 percent for BSM and Corey, respectively. <u>See</u> <u>Certain [FSS] from Mexico</u>, 85 Fed. Reg. 5,390, 5,392 (Dep't Commerce Jan. 30, 2020) (final determination of sales at [LTFV]). BSM challenged Commerce's determination in this Court pursuant to

---

[1] The other Defendant-Intervenor, Corey S.A. de C.V. ("Corey"), does not oppose the motion. Def. Mot. at 2.

Court No. 20-00069 Page 3

section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2012), which permits interested parties to challenge Commerce's final determinations pursuant to 19 U.S.C. § 1673d that a product is or is likely to be sold in the United States at LTFV.[2] See Summons, Mar. 30, 2020, ECF No. 1; Compl., Mar. 30, 2020, ECF No. 6; see also [BSM's] R. 56.2 Mot. for J. on Agency R., Feb. 23, 2021, ECF No. 60 ("Mot. for J. on Agency R."). BSM asserted numerous deficiencies in the final results of Commerce's LTFV investigation into FSS from Mexico, including deficiencies in Commerce's calculation of BSM's constructed value profit rate, Commerce's application of adverse facts available, Commerce's determination to use the purchase order date or sales order acknowledgment date as the date of sale for purposes of currency conversion, and Commerce's calculation of BSM's constructed export price. [BSM's] Non-Confidential Memo. in Supp. of [Mot. for J. on Agency R.], 9–45, Feb. 23, 2021, ECF No. 60. On March 21, 2022, this court remanded Commerce's LTFV determination for further consideration or explanation. See Bldg. Sys. de Mexico, S.A. de C.V. v. United States, 46 CIT __, Slip Op. 22-25 (Mar. 21, 2022) ("BSM II"). The remand results from Commerce are due on June 20, 2022. Id.

On March 20, 2020, prior to this court's remand of Commerce's LTFV determination, the International Trade Commission ("ITC") reached a final negative

---

[2] Further references to the Tariff Act of 1930 are to the relevant section of the U.S. Code.

determination in its investigation into whether imports of FSS from Mexico cause (or represent a threat of) material injury to the domestic industry. [FSS] from Canada, China & Mexico, 85 Fed. Reg. 16,129 (USITC Mar. 20, 2020). AISC challenged the ITC's negative injury determination, and this Court sustained the ITC's findings. See Full Member Subgroup of Am. Inst. of Steel Constr., LLC v. United States, 45 CIT __, __, 547 F. Supp. 3d 1211, 1233 (2021). AISC appealed that decision to the Court of Appeals. See Full Member Appeal. The appeal is pending; briefing is ongoing, and oral argument has not been scheduled.

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(i) and 28 U.S.C. § 1581(c), which grant the court authority to review actions contesting a final affirmative LTFV determination in an antidumping investigation. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936). Although the decision to grant or deny a stay rests within the court's sound discretion, courts must weigh and maintain an even balance between competing interests when deciding whether a stay is appropriate. See id. at 254–55; see also Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997).

## DISCUSSION

Defendant argues that the court should stay this case pending a determination in the Full Member Appeal because "if the Federal Circuit affirms this Court's decision sustaining the ITC's negative injury determination and that judgment becomes final, Commerce will no longer need to complete the remand redetermination ordered in this case." Def. Mot. at 5. Defendant notes the resources that will be expended by Commerce, the parties, and the Court in conducting the remand, and any challenges to the remand. Id. Defendant contends that there is no risk of harm to BSM because this court sustained the ITC's determination and the NAFTA panel is unlikely to reverse the ITC any time soon. Id. at 5–6. Defendant also argues that the stay requested here is of a limited duration (as opposed to the more extended stay previously requested by AISC and denied by the Court). Id. at 6; Building Systems de Mexico, S.A. de C.V. v. United States, 44 CIT __, __, 463 F. Supp. 3d 1344, 1349 (2020) ("BSM I"). BSM responds that the potential harm it confronts as a result of a stay is the same it confronted in AISC's earlier request for a stay, namely being subjected to a dumping order, paying cash deposits (at all or at a higher rate than needed), and potentially being subjected to an administrative review when it might not otherwise be subject to the antidumping order, depending on the outcome of this case. Pl. Opp. at 3 (citing BSM I, 463 F. Supp. 3d at 1348).

A stay is not appropriate in this case. This court has already concluded that Commerce's calculation of BSM's constructed value profit rate, Commerce's

application of adverse facts available, Commerce's determination to use the purchase order date or sales order acknowledgment date as the date of sale for purposes of currency conversion, and Commerce's calculation of BSM's constructed export price are all unsupported by substantial evidence. BSM II at 8–12, 14–16, 17–18, 20–22, 24–26. Although it is too early to tell, it is not outside of the realm of possibility that BSM could achieve a zero or a de minimis rate and be excluded from any potential antidumping order. It is also possible Commerce will assign a rate to BSM lower than that originally found. Either possibility would significantly lower the burdens on BSM (the former possibly obviating the need to participate in an administrative review).

Although the Court will not rely upon a harm that is merely speculative to defeat a request for a stay, because of the proceedings in this case thus far, the harm to BSM is not speculative. BSM (as well as Defendant, Defendant-Intervenor and this Court) have already expended considerable resources briefing, arguing, and analyzing the issues in this case. BSM successfully challenged as unsupported by substantial evidence four Commerce determinations that form the basis of Commerce's finding of dumping. Id. A stay would significantly devalue BSM's investment in its challenge to Commerce's finding of dumping necessary for an order to issue. Should the ITC reverse course, BSM would be able to pursue its challenge; however, it would have to do so after an order had issued. BSM would have to pay cash deposits at the rate currently established by Commerce, which has already been

determined to be unsupported by substantial evidence. Id. BSM would likely have to participate in an administrative review.[3]

The burdens BSM faces distinguish this case from those cited by the Defendant. See Deacero S.A.P.I. de C.V. v. United States, Slip Op. 15-87, 2015 WL 4909618 (Ct. Int'l Trade Aug. 17, 2015) (finding the mere assertion of delay and inefficiency insufficient to defeat a stay); RHI Refractories Liaoning Co. v. United States, 35 CIT 407, 412, 774 F. Supp. 2d 1280, 1285 (2011) (neither defendant nor defendant-intervenor identified any harm that would result from stay); NTN Bearing Corp. of Am. v. United States, 36 C.I.T. 846, 850 (2012) (defendant failed to identify any harm that would result from stay).

Likewise, the Court finds Diamond Sawblades, cited by Defendant, favors Plaintiff's position. See Def. Mot. at 6 (citing Diamond Sawblades Mfrs. Coal. v. United States, 34 CIT 404, 407 (2010)). In Diamond Sawblades, plaintiff sought a stay, to which the defendant and the defendant-intervenors consented, pending the appeal of a negative ITC determination to this Court. See Consent Mot. to Stay Proceedings, Diamond Sawblades Mfs. Coal. v. United States, Court No. 06-cv-00246-RKM (CIT Oct. 4, 2006), ECF No. 27; see also Diamond Sawblades, 34 CIT at 404.

---

[3] "Each year during the anniversary month of the publication of an antidumping . . . order, a domestic interested party or an interested party . . . may request in writing that the Secretary conduct an administrative review under section 751(a)(1) of the Act of specified individual exporters or producers covered by an order . . . if the requesting person states why the person desires the Secretary to review those particular exporters or producers." 19 C.F.R. § 351.213.

Court No. 20-00069 Page 8

This Court remanded the negative injury determination to the ITC, which then reversed its determination and found injury. Diamond Sawblades, 34 CIT at 405. The Court sustained the injury finding, with an antidumping order issuing subsequently. Id. The CIT had not begun to hear the appeal of the Commerce determination at the time of the request for a stay. See id. After the ITC reversed course and this Court sustained, the plaintiff sought to lift the stay in order to challenge the Commerce determinations in hopes of obtaining higher rates. Id. This Court denied the motion to lift the stay concluding, "the current challenges to the estimated dumping margins set forth in Final Results are essentially over [the] rate of antidumping duties that the importers will ultimately pay, but the suit now awaiting a decision at the Federal Circuit will establish conclusively whether antidumping duties should be paid at all." Id. at 407.

Thus, the Court in Diamond Sawblades acknowledged the significance of a challenge that might defeat an order altogether, which is exactly what BSM seeks to do in this case.[4] Moreover, this case is already under way with a remand having issued, as opposed to Diamond Sawblades, where the Plaintiff itself sought a stay prior to resolution of its initial challenge, see Diamond Sawblades, Court No. 06-cv-00246-RKM, got the stay, and then sought to lift the stay prior to the resolution of

---

[4] Because the plaintiff in Diamond Sawblades was the domestic industry, its challenge to Commerce's determination was that the rates were too low. Diamond Sawblades, 34 CIT at 405. Here, BSM seeks a lower rate or to eliminate its rate altogether, which would defeat any antidumping order with respect to BSM.

the corresponding ITC challenge. Diamond Sawblades, 34 CIT at 405. Finally, Diamond Sawblades illustrates the risk to BSM. If the ITC ultimately reverses itself, and an antidumping duty order issues, BSM will be required to pay cash deposits and possibly submit to an administrative review, all while waiting to conclude this litigation in which it seeks to obviate the need for compliance with any such order.[5]

The ITC's and Commerce's determinations in a dumping case normally proceed on parallel tracks with determination from both being necessary for issuance of an antidumping duty order. See 19 U.S.C. §1673. Awaiting decisions of the Court of Appeals will always alleviate the burdens on the parties and this Court, but the possible mootness that might result from a Court of Appeals decision is not enough in this case to pause this litigation given the harm the plaintiff confronts if the Court of Appeals reverses. See Giorgio Foods, Inc. v. United States, 37 C.I.T. 152, 154–55 (2013) (denying stay sought to await further clarification by Court of Appeals). It would be unfair to use BSM's and its affiliates' success in the ITC, and in this Court, as a reason to delay its resolution of its challenge to the Commerce determination given the harm that BSM would suffer as a result of a reversal by the Court of Appeals.

---

[5] Conversely, in Diamond Sawblades, the result of the plaintiff's challenge to Commerce's LTFV determination could only have resulted in a change in rate, not the elimination of the need to comply with the antidumping order altogether. Id. at 407.

Court No. 20-00069 Page 10

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the motion for a stay is DENIED.

                                                  /s/ Claire R. Kelly
                                                  Claire R. Kelly, Judge

Dated:       May 26, 2022
              New York, New York