Slip Op. 22-141

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BUILDING SYSTEMS DE MEXICO, S.A. DE C.V., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> FULL MEMBER SUBGROUP OF THE AMERICAN INSTITUTE OF STEEL CONSTRUCTION, LLC and COREY S.A. DE C.V., <br><br> Defendant-Intervenors. | Before: Claire R. Kelly, Judge <br><br> Court No. 20-00069 <br> PUBLIC VERSION |

OPINION

[Sustaining the U.S. Department of Commerce's remand determination in the less-than-fair-value investigation of certain fabricated structural steel from Mexico.]

Dated: December 13, 2022

Matthew R. Nicely and Daniel M. Witkowski, Akin Gump Strauss Hauer & Feld LLP, of Washington, D.C., for plaintiff Building Systems de Mexico, S.A. de C.V.

Daniel F. Roland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant United States. Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, Franklin E. White, Jr., Assistant Director, and In K. Cho, Trial Attorney. Of counsel on the brief were Spencer Neff and Savannah R. Maxwell, Staff Attorneys, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Alan H. Price, Christopher B. Weld, Stephanie M. Bell, and Adam M. Teslik, Wiley Rein LLP, of Washington, D.C., for defendant-intervenor Full Member Subgroup of the American Institute of Steel Construction, LLC. Also on the brief were Enbar Toledano, Jeffrey O. Frank, Maureen E. Thorson, and Stephen J. Obermeier.

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") remand determination pursuant to the court's remand order, see Building Systems de Mexico, S.A. de C.V. v. United States, 567 F. Supp. 3d 1306 (Ct. of Int'l Trade 2022) ("BSM I"), issued on the court's review of Commerce's final determination in its less-than-fair-value ("LTFV") investigation into certain fabricated structural steel ("FSS") from Mexico. See Final Results of Redetermination Pursuant to Court Remand, A-201-850 (July 20, 2022), ECF Nos. 101-1, 102-1 ("Remand Results"); see also Certain [FSS] from Mexico, 85 Fed. Reg. 5390 (Dep't Commerce Jan. 30, 2020) (final determination of sales at LTFV) ("Final Determination"), and accompanying Issues and Decision Memo., A-201-850, PD 663, bar code 3935345-01 (Jan. 23, 2020), ECF No. 21-6 ("Final Decision Memo"). For the following reasons, the court sustains Commerce's determinations on remand.

## BACKGROUND

The court presumes familiarity with the facts of this case as set out in its previous opinion ordering remand to Commerce, see BSM I, 567 F. Supp. 3d at 1309, and now recounts only those facts relevant to the court's review of the Remand Results. In this LTFV investigation into FSS from Mexico, Commerce selected BSM and Corey S.A. de C.V. ("Corey") as mandatory respondents. See Final

Determination, 85 Fed. Reg. at 5391. In the final determination, Commerce found that certain FSS from Mexico is being, or is likely to be, sold in the United States at LTFV during 2018, the period of investigation ("POI"). Final Decision Memo at 1. BSM moved for judgment on the agency record, challenging Commerce's: (i) calculation of BSM's constructed value profit rate; (ii) use of facts available with an adverse inference ("AFA")[1] based on an unreported BSM sale; (iii) use of the purchase order date or sales order acknowledgment date as the date of sale for purposes of converting foreign currency into U.S. dollars; and (iv) calculation of BSM's constructed export price ("CEP"). BSM I, 567 F. Supp. 3d at 1310.

In BSM I, the court remanded Commerce's final determination on this investigation. 567 F. Supp. 3d at 1309, 1321. Specifically, the court remanded Commerce's: (i) use of Corey's home market sales data in calculating BSM's constructed value profit rate, id. at 1310–16, (ii) application of AFA to BSM's unreported sales from one of its FSS projects, id. at 1316–17, (iii) determination that the date of sale for purposes of currency conversion should be the date of purchase

---

[1] Parties and Commerce sometimes use the shorthand "adverse facts available" or "AFA" to refer to Commerce's reliance on facts otherwise available with an adverse inference to reach a final determination. However, AFA encompasses a two-part inquiry pursuant to which Commerce must first identify why it needs to rely on facts otherwise available and, second, explain how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference when "selecting among the facts otherwise available." See 19 U.S.C. § 1677e(a)–(b).

Court No. 20-00069                                                                                          Page 4
**PUBLIC VERSION**

order or sales order acknowledgment, id. at 1317–18, and (iv) calculation of BSM's constructed export price ("CEP") profit rate. Id. at 1319–21.

Commerce filed the Remand Results on July 20, 2022. In the Remand Results, Commerce: (i) continues to use Corey's home market sales to calculate profit for BSM's constructed value; (ii) determines its previous application of AFA to BSM's unreported sales was unwarranted; (iii) uses the date of substantial completion, in place of the date of purchase order or sales order acknowledgment, as the date of sale for purposes of currency conversion; and (iv) no longer excludes NCI's[2] Costa Rican data from its calculation of the CEP profit rate.[3] Remand Results at 1–2; see also BSM I, 567 F. Supp. 3d at 1320 (remanding Commerce's decision to remove NCI's Costa Rican data from BSM's CEP profit rate).

BSM argues the constructed value profit rate calculation includes data from a project contracted prior to the POI and is otherwise unreasonable.[4] Pl.'s Comments on Remand Redetermination at 7–16, Aug. 19, 2022, ECF Nos. 105–06 ("BSM

---

[2] BSM's U.S. affiliates, NCI Group, Inc. and Robertson-Ceco II Corporation ("NCI"), sell all BSM's CEP sales through its Buildings or Components business segments. Final Decision Memo at 11.

[3] Corey did not comment on the Remand Results.

[4] BSM challenges Commerce's inclusion of Corey's sales of FSS related to the [[
                    ]] (the "challenged project") in Commerce's constructed value profit calculation. Remand Results at 12–15.

Comments").[5] Defendant-Intervenor Full Member Subgroup of the American Institute of Steel Construction, LLC ("AISC") objects to Commerce's reliance on the date of substantial completion of the FSS project as the date of sale for currency conversion purposes, and to Commerce's determination that the unreported sale, for which Commerce previously applied AFA, was unreportable because BSM completed the project after 2018.[6] [AISC's] Comments on Remand Redetermination at 3–12, Aug. 22, 2022, ECF Nos. 107–08 ("AISC Comments"). No party objects to Commerce's remand determination of CEP profit. Defendant United States argues that Commerce's determinations on remand are supported by substantial evidence and in accordance with law. Def's Resp. to Comments on Remand Redetermination at 6–18, Sept. 22, 2022, ECF Nos. 113–14.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2018),[7] and 28 U.S.C. § 1581(c), which grant the court authority to review actions contesting the final affirmative LTFV

---

[5] BSM asks the court not to remand on the constructed value profit issue if the court concludes that the de minimis dumping margin Commerce calculated for BSM in the Remand Results is otherwise supported by substantial evidence and in accordance with law. Id. at 3–6, 16–17.

[6] AISC challenges Commerce's remand determination to consider BSM's project [[          ]], which had its remaining two phases canceled in July 2019, outside the POI. Remand Results at 24–28.

[7] Further citations to the Tariff Act of 1930 will be to the relevant sections of the U.S. Code, 2018 edition.

determination. "The court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (internal quotation marks omitted).

## DISCUSSION

### I. Constructed Value

On remand, Commerce continues to use Corey's home market sales to calculate BSM's constructed value profit and expenses, finding that sales for the challenged project are in-scope and that Corey's home market FSS sales constitute the best information available on the record for valuing BSM's constructed value profit and selling expenses. Remand Results at 4–23. For the reasons that follow, the court sustains Commerce's remand decision to use Corey's home market sales to construct BSM's constructed value profit and expenses.

In a LTFV investigation, Commerce compares the "normal value" of the merchandise to the U.S. price, which Commerce calculates as the "export price" or "constructed export price" under 19 U.S.C. §§ 1677a(a) or (b), respectively. 19 U.S.C. § 1677b(a). "Normal value" is the price for which a producer or exporter sells the merchandise in its home country, or a third country in certain circumstances, in the ordinary course of trade. Id. § 1677b(a)(1). However, if Commerce decides it cannot

determine normal value under § 1677b(a)(1) using a producer or exporter's home market or third-country sales, Commerce will calculate and use constructed value in place of normal value. Id. § 1677b(a)(4), (e).

In calculating constructed value, Commerce approximates the sales price and profits of a producer's home market sales, Mid Continent Steel & Wire, Inc. v. United States, 941 F.3d 530, 542 (Fed. Cir. 2019), and avoids "irrational or unrepresentative results." Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,360 (Dep't Commerce May 19, 1997) ("Preamble"). Commerce considers whether the data with which it calculates constructed value profit results in a fair comparison between normal value and export price. See Husteel Co. v. United States, 98 F. Supp. 3d 1315, 1349 (Ct. of Int'l Trade 2015), aff'd, 710 F. App'x 890, 891 (Fed. Cir. 2018). Commerce's determination must be supported by substantial evidence, which is "such evidence that a reasonable mind might accept as adequate to support a conclusion." Changzhou Trina Solar Energy Co. v. United States, 975 F.3d 1318, 1326 (Fed. Cir. 2020) (internal quotation marks removed).

Commerce calculates constructed value profit by using the exporter or producer's actual profits from home market sales of the product at issue, in the ordinary course of trade. 19 U.S.C. § 1677b(e)(2)(A). If this method is unavailable, Commerce has three alternate methods available. First, Commerce may calculate constructed value profit based on the producer's sales of merchandise in the same general category as the product at issue, as opposed to basing profit on the sales of

Court No. 20-00069                                                                                                                Page 8
**PUBLIC VERSION**

like product.  Id. § 1677b(e)(2)(B)(i).  Second, Commerce may calculate constructed value profit based on the weighted average of profits and expenses from other investigated producers.  Id. § 1677b(e)(2)(B)(ii).  Third, Commerce may use any reasonable method to calculate constructed value as long as profit does not exceed the normal profit received by other exporters or producers.  Id. § 1677b(e)(2)(B)(iii).  The statute does not state a preference for any method—Commerce has discretion to apply the method it finds appropriate to each investigation.  Mid Continent, 941 F.3d at 535; see Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1, at 840 (1994), reprinted in 1994 U.S.C.C.A.N. 4040, 4176 ("SAA").

The court remanded for further explanation or reconsideration Commerce's decision to use Corey's actual profits pursuant to § 1677b(e)(2)(ii) in calculating BSM's constructed value profit.  The court questioned Commerce's use of sales from the challenged project, where Corey's buyer appeared to have accepted the bid in 2017, outside the POI.  BSM I, 567 F. Supp. 3d at 1313–14.  The court also asked Commerce to explain how it could reject BSM's home market data for constituting insufficient volume as a percentage of its U.S. sales, and yet rely on Corey's data when Corey had indisputably fewer home market sales.  Id. at 1315.  Finally, the

Court No. 20-00069                                                                                              Page 9
**PUBLIC VERSION**

court concluded several other factors undermined the reasonableness of Commerce's determination and asked for reconsideration or further explanation.[8] Id. at 1315–16.

On remand, Commerce concludes that, despite the contract's 2017 project number, Corey and its buyer contracted the challenged project in 2018, rendering the project in scope. Although Commerce acknowledges Corey initially reported a project start outside the POI, Commerce concludes the weight of the evidence demonstrates Corey did not start the challenged project in 2017. See Remand Results at 16. Commerce contends Corey personnel mistakenly believed Corey had begun the challenged project in 2017. Id. at 16–17. As a result, Corey personnel assigned materials from the warehouse to the project, and Corey personnel created a project number to record costs for materials Corey personnel mistakenly believed Corey had purchased for the challenged project.[9] Id. at 17. Corey discovered its error late in

---

[8] The court asked that Commerce further explain the reasonableness of its determination given that (i) Corey's business model is to produce FSS for a small number of large projects, while BSM produces FSS for pre-engineered metal building systems ("PEMBS"), which are typically smaller projects; (ii) Corey offers design and erection services in addition to its production and sale of FSS, while BSM only produces FSS; and (iii) Corey's home market profits might not be representative of the Mexican FSS market because its profits were higher than any other Mexican producer on the record. Id.

[9] BSM contends that Commerce's speculation is unsupported by the record: "There is no indication at all that the project number itself or the initial account creation . . . were created in error." BSM Comments at 9. Yet BSM itself concedes that record documents "explain that certain expenses were posted to the project in 2017 in error." Id. It is reasonably discernible that Commerce concludes that the incorrect posting of expenses relates to the mistaken creation of a project number. Additionally, that Corey's buyer issued all purchase orders for this project in 2018 supports Commerce's conclusion that the 2017 project number was an error.

2018, but retained its 2017 project number, even though Corey and its buyer contracted the challenged project in 2018. Id. (explaining Corey assigned project numbers sequentially). Commerce points to record evidence demonstrating the parties contracted and performed the contract in 2018. Id. at 16. In particular, Corey's client issued purchase orders to accept Corey's project bid for the challenged project.[10] Id. at 16–17. These purchase orders were dated 2018, and Corey does not dispute that it contracted the challenged project in 2018. Id. at 6. Further, Corey's recordkeeping supports the conclusion that Corey and its buyer contracted and completed the challenged project in 2018.[11] Id. at 16. Commerce reasonably supports its explanation that the project was mistakenly dated in 2017 by referring to Corey's practice of contracting for projects via purchase orders, which show the project at issue began in 2018.

Regarding Commerce's use of Corey's home market sales despite its number of sales during the POI, Commerce explains it is reasonable to continue using Corey's home market FSS sales data because it is viable and therefore the best source of information available for valuing BSM's constructed value profit and expenses. See Remand Results at 9–11. Commerce considers viability for home market sales to be

---

[10] Commerce concluded that the issuance of a purchase order formed the contract because at verification Commerce did not find evidence of a signed contract or a signed final budget. Remand Results at 6.

[11] Corey reported [[
]] Id. at 16.

based on volume of sales as a percentage of the U.S sales rather than the number of sales.[12] Id. at 9. BSM argues the statute does not require the volume of home market sales to meet a viability threshold to be used to calculate constructed value profits. BSM Comments at 12–13. However, the statute does not prevent Commerce from using a volume threshold for home market sales to ensure the reliability of the information. Mid Continent, 941 F.3d at 539. Here, Commerce has discretion on how it will determine which information is the best source on which to rely for constructed value. See 19 U.S.C. § 1677b(e)(2)(B). Therefore, Commerce reasonably relies on Corey's home market sales because it determines Corey's sales are viable based on their volume while BSM's are not.[13]

---

[12] Although BSM notes it made [[          ]] sales compared with [[     ]], id. at 21, Commerce finds here that the volume of BSM's home market sales are below five percent of the volume of its U.S. sales and are thus too insignificant to accurately reflect the profit rate of the Mexican FSS market. Id. Commerce reasons that, if the volume of BSM's home market sales is insufficient for normal value, it is inappropriate to rely on BSM's home market sales for constructed value. Id.

[13] BSM challenges Corey's home market profit rate as not comparable to BSM's home market sales profit rate. BSM Comments at 12–13. Yet, Commerce reasonably concludes that BSM's home market sales profit rate is not a proper comparator. Commerce determines that the volume of BSM's home market sales not viable to permit a proper comparison for the purposes of normal value. See Remand Results at 20–21. If the volume of home market sales is not viable for the purposes of comparing home market sales to U.S. sales, it is reasonably discernible that Commerce concludes the number of sales are insufficient to use as a basis of comparison for other purposes as well. Thus, Commerce's conclusion that home market sales profit rate data cannot be relied upon to produce an accurate reflection of the Mexican FSS market for use as a comparison for Corey's home market profits is reasonable.

Likewise, Commerce's determination not to rely on data from the other companies on the record is reasonable. Commerce concludes that, unlike the alternative companies, "Corey's combined selling expenses and profit closely approximates the statutory preference for calculating [constructed value] profit and selling expenses because Corey is a Mexican producer of FSS and the profit and selling expenses that we used in our calculation are from Corey's home market sales of FSS in the ordinary course of trade." Remand Results at 10. Commerce explains the advantage of using Corey's data rather than other producers is that Corey's profits are specific to FSS producers. Id. at 10–11, 22.

Regarding the factors undermining the reasonableness of using Corey's home market sales, Commerce explains why those factors do not lead Commerce to reconsider using Corey's home market sales to calculate BSM's constructed value profit. See Remand Results at 11. The court questioned whether the differences between Corey and BSM's businesses—Corey produces FSS for a small number of large projects per year while BSM produces FSS for smaller projects—detract from the reasonableness of using Corey's home market data. Id. at 11. Commerce explains the record does not reveal a pattern of profit on Corey's FSS sales that would overstate the profit rate Commerce assigned to BSM's constructed value. Id. Commerce finds the fact that both BSM and Corey sold FSS, the actual merchandise at issue, to be more important than differences such as project size or design. Id. Additionally, although Corey's home market profit was higher than the profit of any

other Mexican FSS producer on the record, id., Commerce differentiates these other producers on remand in a manner that accounts for the profit differences. Id. at 18–20. These other companies produce a wide range of products while BSM produces only FSS, and Commerce determines that "their profit ratios are not sufficiently comparable to the profit rate of a Mexican producer of FSS to be appropriate benchmarks for gauging how representative a profit ratio is for a Mexican producer of FSS." Id. at 20. Thus, Commerce's use of Corey's home market sales is reasonable because it explains why Corey's data is the best source of information available on which to base constructed value and addresses the evidence detracting from its use of that data.

## II.   Facts Available with an Adverse Inference

In its final determination, Commerce applied AFA to one of the projects BSM did not report during the investigation. Final Decision Memo at 54–55. The court determined Commerce's decision on this issue to be unsupported by substantial evidence and remanded to Commerce for further explanation or reconsideration.[14] BSM I, 567 F. Supp. 3d at 1316–17. On remand, Commerce reconsiders its

---

[14] BSM and its buyer contracted the project at issue in 2018, and that project contained multiple phases. BSM I, 567 F. Supp. 3d at 1316. With two phases remaining, BSM treated this project as out of scope because BSM did not consider the project to be substantially complete during the POI. Id. at 1316. BSM's buyer canceled the remaining two phases of the project in July 2019 after the deadline passed for BSM to respond to Commerce's inquiries. Id. The court rejected Commerce's view that the final phases were retroactively completed in 2018. Id. at 1316–17.

determination in light of the court's remand order and determines AFA to be unwarranted because BSM properly excluded sales related to the project from its response to Commerce. Remand Results at 25. For the reasons that follow, the court sustains Commerce's remand determination of this issue.

When information necessary to a LTFV investigation is missing, Commerce uses facts otherwise available to fill the gap in the record. See 19 U.S.C. § 1677e(a); Nippon Steel Corp. v. United States, 337 F.3d 1373, 1380–81 (Fed. Cir. 2003). If a party fails to cooperate to the best of its ability and causes a gap in necessary information, Commerce may apply an adverse inference when selecting facts available to fill the necessary information gap. 19 U.S.C. § 1677e(b); Nippon, 337 F.3d at 1380–83.

On remand, Commerce determines that application of AFA to the unreported project is unwarranted in light of the court's remand order. Commerce concludes that, because BSM and its buyer only completed the terms of the agreement in July 2019 when the buyer canceled the remaining project phases, the FSS order at issue was not substantially complete during the POI. Remand Results at 26. Thus, Commerce's decision not to apply facts otherwise available is reasonable because it found BSM properly excluded FSS sales for this project from its U.S. sales database and its determination is supported by the record. See id. at 25–26.

AISC argues that, according to BSM's own questionnaire responses, the contract was complete in 2018. AISC Comments at 9. AISC points to BSM's response

to Commerce indicating that a project is complete "when the final shipment occurred." Id. AISC argues, because the project was canceled in 2019, the final shipment occurred in 2018, and therefore the project must have been complete in 2018. Id. at 10. As explained in BSM I however, the final shipment was not final until 2019 when the buyer canceled the contract. 567 F. Supp. 3d at 1317.

AISC also argues that finding the project to be outside the POI might be inconsistent with how BSM reports its other sales. AISC Comments at 11–12. AISC speculates that, if a buyer canceled another project in early 2019, BSM would have reported the sale in its database, under the definition Commerce applies on remand. Id. However, AISC does not point to any record evidence showing another canceled project was in fact reported. Even if there were evidence of another canceled project that BSM included in its database, that fact would not cause this project to have been complete in 2018. Thus, AISC's argument fails.

### III. Date of Sale

In the final determination, Commerce used the date of the purchase order or the sales order acknowledgment instead of the invoice date as the date of sale for currency conversion purposes. Final Decision Memo at 40. The court remanded for Commerce to further explain or reconsider its decision. BSM I, 567 F. Supp. 3d at 1317–18. On remand, Commerce determines the date of substantial completion to be the appropriate date of sale because it is the earliest date on which BSM and its buyer

Court No. 20-00069 Page 16
**PUBLIC VERSION**

firmly established the material terms of sale. Remand Results at 33. For the following reasons, the court sustains Commerce's remand determination.

Commerce's regulations state that it will use the invoice date as the date of sale unless Commerce determines the buyer and seller established the material terms of the transaction on a different date. 19 C.F.R. § 351.401(i). Although Commerce does have some discretion in determining date of sale, it presumes the invoice date to be the date of sale. See id.; see also Preamble, 62 Fed. Reg. at 27,349. Commerce may use an alternative date only if there is "satisfactory evidence that the material terms of sale are finally established," and "the terms of sale must be firmly established and not merely proposed" to rebut the presumption of using the invoice date.[15] Preamble, 62 Fed. Reg. at 27,349.

On remand, Commerce determines that the date of sale for custom-made merchandise is a date other than the date of invoice only when there is evidence the seller and buyer firmly established material terms on the alternative date. Remand Results at 30–31. Here, Commerce concludes that, because price and quantity are still unresolved after the purchase order and sales order acknowledgment, the buyer

---

[15] Commerce stated in the final determination that BSM regards the purchase order and sales order acknowledgments as contracts. Final Decision Memo at 40. Further, Commerce determined that FSS is "large custom-made merchandise," which allows Commerce to deviate from using the invoice date as the date of sale. Id. Yet, Commerce's regulations only permit it to rebut the presumptive use of the invoice date when Commerce determines the buyer and seller established the material terms of a transaction on a date other than the invoice date. BSM I, 567 F. Supp. 3d at 1317–18.

Court No. 20-00069 Page 17
**PUBLIC VERSION**

and seller instead firmly established material terms on the date of substantial completion. Id. at 31–34. Commerce's conclusion is reasonable because it applied its regulation to BSM's sales to determine that substantial completion is the proper date of sale for currency conversion purposes.

AISC argues Commerce fails to conduct a case-specific, fact-intensive analysis in determining that substantial completion is the appropriate date of sale for BSM. AISC Comments at 4. AISC points to BSM's statement that it considers orders to be firm with agreed terms on the contract date. Id. Further, AISC argues Commerce fails to address the nature of changes in the specific context of the FSS industry. Id. at 7. AISC in effect asks the court to reweigh the evidence, which the court declines to do.

## CONCLUSION

For the foregoing reasons, the Remand Results are supported by substantial evidence in accordance with law, comply with the court's order in BSM I, and, therefore, are sustained. Judgment will enter accordingly.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated:  December 13, 2022
        New York, New York